## In re DALLAS LEVEE IMPROVEMENT DISTRICT.

### No. 4138.

District Court, N. D. Texas, Dallas Division.

Nov. 30, 1945.

R. W. Gray and W. P. Dumas, both of Dallas, Tex., for petitioner.

Bruce Graham, of Dallas, Tex., for Kenneth M. Keefe and John W. Getz, Jr., the Bondholders' Committee.

Henry D. Akin, of Dallas, Tex., for J. M. McGrath and Louise F. Corbusier.

Robert Ogden, of Dallas, Tex., for R. E. Simon, et al.

Lester A. Russell, in pro. per.

Scurry & Scurry, of Dallas, Tex., in pro per.

ATWELL, District Judge.

The Trinity River upon which Dallas is situated, had an annual habit of overflowing its natural banks, resulting in considerable destruction.

In 1926, 7,200 acres along this notionate waterway was voted, under a state statute, into a Levee Improvement District and a bond issue of $6,000,000 was authorized to build levees. The bonds were sold largely out of Texas. The levees and necessary pumps for effective work during the flooding season require expenditure for maintenance and the interest on the bonds, as well as the bonds themselves, require a sinking fund for liquidation. Such moneys were to be raised by taxation. Tax collections were insufficient. A refunding was legally ordered in 1937. That plan has also proven insufficient.

The present plan, made after action by the state Legislature authorizing the procedure and after the amendment to the national bankruptcy statute resulting in a constitutional provision, seems to support the views expressed in the testimony that it cures such impotency as existed in the former efforts. The provision for a minimum rate and for a maximum rate that may be exacted from the landowners adjacent to the channel, seems to be sufficiently equitable to induce industry which has heretofore refused such locations because of tax hazard. Likewise, the plan has the approval of sixty-seven percent of the bondholders and seems to have reached its perfected state without any discrimination or unfairness.

There is on hand approximately $75,000, out of which the expenses for the necessary work in the preliminary steps for the present triumph are to be paid. The balance that remains in such fund is to be distributed among the 1928 and the 1937 bond holders.

In addition to this finding, the court must solve two other questions:

(a) The question of interest coupons, either clipped or unclipped which are overdue more than four years;

(b) Allowances to be made to attorneys, to depositories, for cartage of the prior bonds to the state Comptroller at Austin, the printing of the issue under the present plan, and the return from the Comptroller to the owners.

■ (a) The Texas statute of limitation fixes four years for written obligations. There should be read with this statute the thought that it is operative only if and when the debtor asks for such operation. If the debtor sees fit to forego, or toll, or otherwise recognize the debt, it does not become operative. Therefore, all interest coupons more than four years overdue, which were not exempted by provisions in resolutions of the debtor, will not participate in this refunding.

(b) The question of allowances is complicated by some duplication. The testimony gives us a picture that is not exactly pastoral in its simplicity. The effort and genius of a number of artists enter into its coloring and general effect. There must also be considered the fact that the investor, in order to facilitate collection, supervision, refunding and safe holding, turned his bonds over to agencies chosen by him. Those agencies are attorneys and banks. Also, it must be remembered that the fund out of which these amounts are to be paid belong to such investors and that while they have gracious and appropriate confidence in those who represent them, they expect the court, who looks at this picture, to deal fairly with them and that he will not allow to be taken out of this fund too much for the remuneration of such representatives.

With those thoughts carefully in mind, the allowances are made.